WASHBURN & MOEN MANUF'G Co. and ELWOOD v. FUCHS.[*]

SAME v. SIMMONS HARDWARE Co. and others.[*]

SAME v. GATES.[*]

SAME v. SIMMONS HARDWARE Co. and others.[*]

SAME v. GATES.[*]

(*Circuit Court, E. D. Missouri.* June 4, 1883.)

1. PATENTS—REISSUE MUST NOT BE BROADER THAN THE ORIGINAL.

The reissue of a combination patent must be confined to the original combination, and cannot be expanded to make a new combination by the introduction therein of devices not included in or suggested by the original.

2. SAME—BARBED-WIRE FENCE—KELLY REISSUE—INFRINGEMENT.

The original Kelly patent on barbed-wire fences, numbered 74,379, and issued February 11, 1868, was for a combination by which a plate of iron or steel was strung on a wire and fastened by a blow or compression so as to flatten the opening and fasten it to the wire. The patent contained the following clause, viz.: "I can, where it is desirable to increase the strength of the wire, lay another wire of the same or different size along-side of a thorn wire, and can twist the two by any suitable mechanism. Figure 2 is referred to. It tends to insure a regularity in the distribution of the points in many different directions." The reissue of the same patent, No. 6,902, granted February 8, 1876, suggests in its specifications that the twisted wire will lock the thorns and insure a regularity in the distribution thereof. Prior to the Kelly reissue other constructions of barbs, and their connection with a second and twisting wire to lock barbs of different construction, had been patented or applied for. *Held,* in a suit to recover against alleged infringers who manufactured a fence in which the barb is of wire coiled around one of the strands of the fencing, and locked in position by a second wire twisting around the first: (1) That the wire fence manufactured by defendants neither infringed the original nor the reissued Kelly patent; (2) that the Kelly reissued patent was void because for a combination not included in or suggested by the original, and because, if there had been inadvertence, etc., on his part, he had forfeited his right to have his mistake corrected by his laches.

3. SAME—GLIDDON REISSUE.

The original Gliddon patent, No. 150,683, on wire fences, was for a combination of two wires not twisted, but looped by spurs at intervals, connected with a slotted tube and springs to regulate expansion. In the reissue No. 6,913 the looping of the wires, the use of the spurs with respect thereto, the slotted tube and spring disappear, and the close twisting of two wires, with spurs interjecting at stated intervals, and locked in position by the second or twisting wire, is claimed. *Held,* that the reissue is void because for a new combination.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

Motions for Preliminary Injunctions.

WASHBURN & MOEN MANUFACTURING CO. AND ISAAC L. ELWOOD *v.* HENRY FUCHS. No. 2,081. This case rests on the validity of the Gliddon reissued patent, No. 6,913, and alleged infringement thereof by the defendant.

WASHBURN & MOEN MANUFACTURING CO. (sole plaintiff) *v.* SIMMONS HARDWARE CO. ET AL. No. 2,100. This suit is for an alleged infringement of the Kelly reissued patent, No. 6,902, February 8, 1876.

WASHBURN & MOEN MANUFACTURING CO. *v.* JOHN W. GATES. No. 2,104. This depends on the Kelly reissue.

WASHBURN & MOEN MANUFACTURING CO. AND ISAAC L. ELWOOD *v.* SIMMONS HARDWARE CO. ET AL. No. 2,106. The Gliddon patents are alone involved.

WASHBURN & MOEN MANUFACTURING CO. AND ISAAC L. ELWOOD *v.* JOHN W. GATES. No. 2,112. The Gliddon patents alone are before the court.

*B. F. Thurston, Thomas H. Dodge, Coburn & Thacher, Offield & Fowle, John C. Dewey,* and *Henry Hitchcock,* for complainants.

*J. M. Holmes, Walker & Walker,* and *Dyer, Lee & Ellis,* for defendants.

TREAT, J. It will be seen, from the foregoing enumeration and statement of causes, that the points are not the same in all respects in each case. Some involve, solely, the validity of the Kelly patents, and some the Gliddon patents, with the alleged infringements, respectively, as to each of said patents. Inasmuch as the Washburn & Moen Manufacturing Company is the sole assignee of the Kelly patents, and said company, together with Elwood, is assignee of the Gliddon patents, the cases have to vary accordingly. It seems from the report (4 FED. REP. 900) that many elements of the cases now to be considered underwent elaborate consideration before that United States circuit court. The different relationship of the plaintiffs, as assignees, has caused the diversity of suits. The general propositions controlling all of these suits may properly be considered without detailing further the specific differences between them; for if the conclusions reached are correct, they cover all the pending motions. The arguments were, by desire of the court and of all the parties, extended far beyond what is usual on motions of this kind. They went into a full consideration of the validity of the various reissues, and the questions of infringement.

Acting upon the suggestions of counsel, and being fairly advised of the main points at issue, this court does what it is seldom willing to do, viz., express somewhat *in extenso* what ordinarily would be reserved for final hearing. This is the more cheerfully done because

like motions are pending in other courts of this circuit, and uniformity of decision should be had.

It has been deemed proper, in the interest of all concerned, that there should be the fullest interchange of views among the judges in this circuit before whom like motions are pending, so that the views here expressed might not be in conflict with those of other courts in this circuit, but that these might be presented as test cases.*

The Hunt and Smith patents were commented upon in the case against *Haish*, 4 FED. REP. 900. The use by Hunt of a pointed sheet, with a hole punched therein, to be strung on a wire or rope, and by Smith, of a bend or curve in the wire to prevent the slipping of the pointed sheet or barb, is outside of the questions now presented, except to the extent that they show the state of the art when Kelly's original patent was granted. It is clear that Hunt contemplated only the stringing on wires or ropes of his pointed sheet barbs, punched in the center, as stated. Such punched sheets could not retain, distributively, their position along the wires or ropes. Hence Smith suggested the bending of the wires at stated intervals, so that the sheet barbs might be thus distributed. Such was actually the state of the art when Kelly conceived the plan of hammering or compressing the sheet barb on the fence-wire so that the same could not slip, thus making rigidly a barbed wire of barbed sheets fastened to the fence-wire, before or after the fence-wire was strung in place. There was a common thought, viz., the use of such punched sheets, strung along a rope or wire. Next, by Smith, a mode of keeping such barbed sheets in position; and then the compressing mode by Kelly.

In the light of these suggestions the court is brought to a consideration of the Kelly and Gliddon patents, and of their respective issues. It has been deemed advisable, instead of giving a separate opinion in each of the cases, some depending on one and some on another reissue, to treat at the same time all the patents involved; for the conclusions reached affect all alike.

The Kelly patent, No. 74,379, dated February 11, 1868, was for a combination by which a plate of iron or steel was strung on a wire and fastened by a blow or compression so as to flatten the opening and fasten it to the wire. Said plate had sharp thorns or points. It was stated that the wire might be put up with the thorns previously attached and secured, or put on loosely, and distributed and

*Judge TREAT said, when he read the opinion, that it had been submitted to both Judge LOVE, of Iowa, and Judge McCRARY, and that they both fully concurred.

secured after the fence was erected. The former—that is, fastening of the barbs to the wire before the fence was erected—was stated to be preferred.

This clause appears in the specification:

"I can, where it is desirable *to increase the strength of the wire,* lay another wire of the same or different size along-side of a thorn-wire, and can twist the two together by any suitable mechanism. Figure 2 is referred to. It tends to insure a regularity in the distribution of the points in many different directions."

The Kelly reissue, No. 6,902, dated February 8, 1876, contains. claims, the first and fourth of which are alone involved in this suit. To ascertain their effect, reference must be made to the specifications in the reissue. Its specifications suggest that the twisted wire will lock the thorn and insure a regularity in the distribution thereof.

The original patent suggested only the twisting of the second wire to *strengthen* the first wire on which the pointed plates were strung. and made rigid by compression. It is obvious that the combination in the original patent did not include any other than the thorn plates, and the mode of fastening them in the way stated, without reference to any use of the twisted wire with respect thereto. Under the reissue the first claim is substantially the same as in the original patent, which the defendant has not infringed. The fourth claim of the reissued patent is for twisting two wires and a series of thorns strung upon one of the wires and held in position by them as set forth; that is, by compression. The original patent for the fixed barbed plates, made by hammering or otherwise, did not contemplate defendant's form of barb or the use of a twisted wire to keep barbs in position. If, therefore, the reissued patent 6,902 is to be considered as covering more than the mode of fastening the plate barbs to the wire in the combination stated, and as extending the use of the twisted wire so as to include its use for the distribution and locking of all kinds of barbs, then said reissued patent is invalid as to said extension, because it was not included within the scope of the original invention, and also because if there were any inadvertence, etc.; the patentee, under the recent decisions of the supreme court, was too late in correcting the alleged mistake, etc. The result, is that said reissued patent is invalid, so far as the same may be supposed to cover the use of a twisted wire to *lock and keep barbs in position.* Also, that the defendant's product, both as to the barb and the mode of fastening or distributing the same, is entirely outside of the Kelly patent or its reissue.

In the original Kelly patent, the specifications of which are above quoted, there is nothing to indicate the use of a second wire, *twisted*, *for locking purposes*. The means of keeping the plate or barb in position was entirely distinct from the strengthening of the fence-wire by twisting around it a second wire. Prior to the Kelly reissue, February 8, 1876, other constructions of barbs, and their connection with a second and twisted wire to lock barbs of different construction, had been patented or applied for. Hence the attempt in the Kelly reissue to broaden the original patent, to cover what was not included in or suggested by said original patent, more especially in the light of subsequent inventions and of his laches, renders the reissue invalid. His reissue was subsequent to the Gliddon patents. True, in the specification of his reissue he says: "Where it is desirable to increase the strength of the wire, I lay another wire of the same or different size along-side of a thorn-wire and twist the two together by any suitable mechanism." This construction is represented in figure 2. "It *locks* the thorn and also tends to insure a regularity in the distribution of the points in many directions." It will thus be seen that the purpose of the second twisted wire was suggested in the reissued patent to have a purpose not hinted at in the original. Indeed, if the barb plate was rigidly attached to the fence-wire, which was the main object of the original invention, the second wire could accomplish no other purpose, as stated, than to *strengthen* the first wire, for the barb plate was already, by the contrivance named, rigidly fixed.

In the original patent, the second claim was for "the thorns, E, and wire, D, combined in the manner represented, and adapted for use in a fence herein set forth." That was for a combination of the thorns and wire; the thorns having been, by compression, fixed to the wire either before or after the wires were strung on the fence; the second wire performing no other function than *strengthening* the first wire. There was no *locking* suggested, nor, mechanically, could it be otherwise than useless for locking purposes, inasmuch as the locking purposes had been provided for by compression.

It is contended that the first and fourth claims of the Kelly reissue are not only for the same invention covered by the original patent, but practically cover *any* use of a second or twisting wire by which the barb-plates or series of thorns can be held in position, distributively, along fence-wires, whether the thorns are perforated plates or short twisted wires in loops. The *first* claim of the Kelly reissue is in these words: "I claim the combination substantially as described

of the fence-wire, D, and a series of thorns, E, *rigidly* fixed thereto, for the purpose herein set forth:"—that is the same combination mentioned in the original patent as already described. The *fourth* is in these words: "I claim the combination substantially as described of two wires, D, D, twisted together, and a series of thorns, E, strung upon one of said wires and held in position by them, as and for the purposes set forth."

It is evident that if the use of the second wire was to *lock* the thorn without the compression of the barb-plate, then an entirely new device had been inserted into the old combination. It can hardly be contended that the combination of either the original or reissued patent covered all possible forms of barbed plates, or barbs, or points which might be used in any combination irrespective of compression where twisted wires were to be used. Hence the result of this examination is—*First*, the reissued patent is expanded, unlawfully, to cover what was not a part of the original invention or combination; *second*, that inasmuch as the use of the second or twisted wire for *locking* purposes, without compression or perforated barbed plates, had in the mean time been patented, or applied for; and inasmuch as there was no inadvertence, accident, or mistake to be corrected,—it is obvious that the reissued Kelly patent is invalid, because, not only of the laches of the patentee, but also because it is broader than the original invention. It evidently was intended to cover subsequent inventions, and by expansion appropriate the inventions of others, thus coming within the denunciation by the supreme court as to reissued patents so broadened.

The next patent under consideration is reissue No. 6,913, February 8, 1876, being a reissue of patent No. 150,683, May 12, 1874.*

The claim in the original patent is in these words: "The combination of the wire, B, C, slotted tube, G, coil spring, L, and post, K, for keeping the wires in proper tension in various temperatures, as described and shown." The combination was for wires extended longitudinally, clasped at intervals by spurs, leaving the wires intermediately in an elliptical form, whereby said spurs would be retained in position, and said wires, passing through the slotted tube with its coil spring, would be kept in proper tension as the temperature varied. Of course, the clasping by said spurs was not designed to be so rigid as to prevent the operation of the slotted tube from permitting expansion and contraction.

*The Gliddon patent.

Neither the specifications and drawings, nor "claim," are for the mode of *interlocking* barbs or spurs by means of a twisted wire. The original patent was for an entirely different mode of using spurs, and was for regulating the expansion and contraction of the wires,—a combination complicated in its character, and requiring a slotted tube and springs as described in it. There was nothing either in the drawings or specifications to indicate what is claimed in the re-issue thereof. As to the reissue of February 8, 1876, No. 6,913, it is impossible to read it without observing that it was broadly ex-panded to cover what was not even hinted at, or in anywise sug-gested, in the specifications of the original patent, or in the claim therefor.

The claim in the reissue is: "In combination with a fence-wire, a barb formed of a short piece of pointed wire, secured in place upon the fence-wire by coiling between its ends, forming two projecting points substantially as specified." Thus an original combination of two wires, not twisted, but looped by spurs at intervals, connected with a slotted tube and springs to regulate expansion, is, by the reissue, sought to be converted into another or new combination, whereby the looping of the wires, the use of the spurs with respect thereto, the slotted tube and spring disappear, and an entirely new combination is presented, namely, the *close* twisting of two wires, with spurs interjecting at stated intervals and locked in position by the second or twisting wire. A new position and use of the wires are thus presented, a new arrangement of the spur or barb in con-nection therewith, and the absence of the slotted tube or spring. The purpose of providing for expansion disappears.

The views thus expressed receive special cogency from the fact that on November 24, 1874, Gliddon obtained patent 157,124 for an invention, the claim of which is in these words: "A twisted fence-wire, having the transverse spur-wire, D, bent at its middle portion about one of the wire strands, *a*, of said fence-wire, and clamped in position and place by the other wire strand, *z*, twisted upon its fel-low substantially as specified."

It is contended that the prior patent of May 12th contained the in-vention of this latter patent. If so, why did Gliddon take a second patent for what was already embraced in his former patent? Did not the taking of the latter patent necessarily imply that he had no prior patent therefor—that the two inventions were wholly different?

It is contended that as the application for the later patent was made prior to the application for and issue of the earlier patent,

and that as by the rules of the patent-office a reissue, if desired, had to be made for the patent first granted, therefore the patentee is entitled to go back to his first application and thus eke out his claim for a reissue, as if both patents were combined in one. Great stress has been laid on this point. It is obvious that the Gliddon reissue 6,913, of itself, was altogether too broad to be sustained, unless it is permissible to go behind the original patent of May 12, 1874, and help out the same by reference to an application under which a later patent was issued. This court is not prepared to accede to any such view of the law, whereby several patents can be combined into one for the purpose of enabling a patentee to secure a reissue of a specified patent for an invention not contained in the original. It appears to the court that the reissued Gliddon patent was for an entirely different invention than that claimed in his original patent. It also appears that he was fully aware of that fact, because he received the later patent of November 24, 1874, and now claims to expand his prior patent of May 12th to cover his later patent. It would seem there was no "inadvertence, accident, or mistake" in the patent of May 12th, entitling him to the reissue,—another and an entirely distinct and patented invention.

The conclusion is that both reissued patents are void.

The attempt to justify the reissued patent of May 12, 1874, by invoking the prior application, October 27, 1873, for the patent of November, 1874, falls within the reasoning of the United States supreme court, 11 Wall. 516; the statement wherein is the *converse* of that now under review. That court said:

"Where the thing patented is an entirety, consisting of a single device or combination of old elements incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication, or machine, and another part in another prior exhibit, and still another part in a third one, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement."

If this be true as to the nature of a combination, when an infringer seeks to defeat the same, why is it not equally true where a reissue is sought to be upheld, under an original patent, by importing into the reissue devices not suggested in the original, making thereby a new combination, distinct from the original? In other words, the reissue must be confined to the original "*combination*," and cannot be expanded to make a new combination by introduction

therein of devices, new or old, not included in or suggested by the original. *Munson* v. *Gilbert & Barker Manuf'g Co.* 3 Ban. & A. 595. It must be borne in mind that the court is dealing with a "combination" patent, and that under pretense of a reissue a new combination cannot be upheld.

Therefore the several motions for preliminary injunctions are overruled.