ADRIANCE, PLATT & CO. v. McCORMICK HARVESTING MACH. CO. et al.

(Circuit Court, N. D. Illinois. March 24, 1893.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT SUITS—PARTIES.
A licensee may prosecute in his own name suit for infringement of a patent where the defendant is the owner of the legal title to the patent; citing Littlefield v. Perry, 21 Wall. 205.

2. CONTRACT—CONSTRUCTION OF—AMBIGUITY.
It is only a latent ambiguity, which may be explained by evidence aliunde. Doubts apparent upon the face of an instrument must be resolved by the court, resorting, if necessary, to the rule that a grant expressed in doubtful words shall be construed most strongly against the grantor.

3. PATENTS FOR INVENTIONS—LICENSE FOR SALE IN FOREIGN COUNTRIES.
In addition to the grant of an exclusive license to manufacture and sell in certain specified parts of the United States, the license in this case contained the following clause: "And, so far as we can control the same, the exclusive right to build harvesters and binders, under the rights herein granted, for sale in Europe, Australia, and South America." Held that, fairly and reasonably construed, this language conferred upon the licensee

an exclusive right to manufacture within the United States, for sale in the foreign countries named, and hence that an injunction should issue against the parties manufacturing in the United States outside the territorial limits covered by the license to restrain them from manufacturing for such foreign trade.

4. INJUNCTIONS ORDERED.
In this case the court finds that complainant is entitled to a preliminary injunction to restrain infringement of 16 patents issued to James R. Severance for improvements in harvesters and binders.

In Equity. Bill by Adriance, Platt & Co. against the McCormick Harvesting Machine Company and others for infringement of certain patents. On motion for preliminary injunction. Granted.

Banning, Banning & Payson, for complainant.
Robert H. Parkinson, for defendants.

WOODS, Circuit Judge. The bill shows that 16 letters patent of the United States for improvements on harvesters and binders had been issued to one Severance, the inventor; that Severance had conveyed a two-thirds interest to Adsit and Baldwin; that they three, being owners of all the patents, granted to the complainant, an incorporated company, upon condition of the payment of a royalty of five dollars upon each machine made and sold, the exclusive right to make, use, and vend the inventions in specified parts of the United States, and also, so far as they could control the same, the exclusive right to build the patented machines for sale in Europe, Australia, and South America; that thereafter Severance, Adsit, and Baldwin transferred all their right, title, and interest in the patents to the defendant McCormick, subject to the rights of the complainant; that McCormick, being the president of the defendant company, granted and conveyed the rights and interest so acquired by him to that company, subject to the rights of the complainant; that, since McCormick became owner of the patents and assignee of the contract between the complainant and Severance, Adsit, and Baldwin, the complainant has duly paid to him the royalties in that contract stipulated to be paid upon all machines sold, including machines sold in Europe; but that the defendants, in violation of the complainant's exclusive right, have made and sold machines containing the patented improvement in England, France, and Germany, and threaten to continue to do so.

There are two instruments, alleged to have been executed by Severance, Adsit, and Baldwin, under which the complainant asserts its claims; but the first of them, dated August 29, 1887, was signed only by Baldwin, and his authority to bind Adsit and Severance is questioned. Whether or not he had authority need not be considered, because that writing, it seems clear, was intended to be only a preliminary agreement, which for present purposes should be deemed to be merged in the more formal deed of November 18, 1887, which was executed by all parties concerned, and was duly recorded in the patent office at Washington. By that deed, after reciting the various patents and transfers thereof which

had been made, the owners grant to the complainant the exclusive right to make, use, and vend the inventions covered by the patents and by renewals thereof in specified parts of the United States, "and also, as far as we [the owners] can control the same, the exclusive right to build harvesters and binders under the rights herein granted for sale in Europe, Australia, and South America."

Upon a similar bill brought by the complainant against the defendant company in the United States circuit court for the northern district of New York, and which was dismissed because the defendant was not amenable to process in that state, Judge Wallace held that neither McCormick nor the defendant had "assumed any contract obligation to the complainant," and that upon the facts set forth "the cause of action is the ordinary one for infringement," to be prosecuted and defended in the usual way. 55 Fed. Rep. 287. There is here, however, no question of jurisdiction; and it is not necessary to consider whether or not the defendants, by taking title to the patents subject to complainant's rights, and by taking an assignment of complainant's obligation to pay royalties, and by receiving payment thereof from the complainant, notwithstanding they have assumed no contract obligation, are estopped to deny the validity of the patents, or complainant's rights thereunder. Familiar analogies may be found in the sales of property, real or personal, subject to the rights of third parties. But here the defendants have made no question of the validity of the patents or of complainant's right, except disputing the scope of the grant under which they are asserted, and do not deny having made in the United States, for sale in Europe, machines covered by some of the patents, and avow their purpose to continue so to do. They concede to the complainant, in connection with its exclusive right to manufacture and sell within the territorial limits of its grant in the United States, the right within those limits, exclusive therein, to manufacture for sale in the foreign countries named; but claim for themselves, in connection with their exclusive right to manufacture and sell in other parts of the United States, a corresponding right therein to manufacture for sale in the same foreign countries. The complainant, on the other hand, insists that the right given it to build machines under the patents for sale abroad is exclusive, not in respect to the territory in this country in which it may build machines for foreign sale, but in respect to the countries in which the sales may be made.

One of the defendants being the owner of the patents sued on, the complainant, though only a licensee, may prosecute the suit in its own name. Littlefield v. Perry, 21 Wall. 205.

Affidavits have been presented on either side, to aid or control the interpretation of the grant in question, but they are not deemed admissible. It is a latent ambiguity, which may be explained by evidence aliunde. Doubts apparent upon the face of an instrument must be resolved by the court, resorting, if necessary, to the rule that a grant expressed in doubtful words shall be construed most strongly against the grantor, whose words they are. Fairly

and reasonably construed, the terms used in this grant must be held to have conferred upon the complainant the exclusive right which it contends for in respect to sales abroad. The owners of the patents first give the complainant an entire and exclusive right under the patents to make, use, and sell the invention in designated parts of the United States, and then add the clause the meaning of which is in dispute: "And also, so far as we can control the same, the exclusive right to build harvesters and binders under the rights herein granted for sale in Europe, Australia, and South America."

It is insisted on behalf of the respondent that the phrase, "under the rights herein granted," expresses a territorial limitation, which confines "the exclusive right" to build machines for sale abroad to those parts of the United States to which the preceding grant was restricted; making it the meaning of the entire clause that in those parts of the United States, to the exclusion of all others, the complainant should have the right to build machines for sale abroad in the countries mentioned. This, as it seems to me, is a forced and inadequate construction. It requires that the word "herein" be read as if it were "hereinbefore," makes the word "exclusive" meaningless, and leaves to the phrase, "as far as we can control the same," little or no significance.

The exclusive right of the complainant in this country had been defined in unequivocal terms by the first clause of the grant. Nothing further was necessary to exclude the grantors or third persons from making or selling the invention within the designated states and territories, (Brush Electric Co. v. California Electric Light Co., 52 Fed. Rep. 945, 959;) and if the purpose was simply to give the complainant the further, but not exclusive, right to sell in the countries abroad, it would have been enough to add, "And also the right to build, within the states and territories named, harvesters and binders, containing the inventions, for sale in Europe, Australia, and South America," with a proviso that the right should be protected and continued under any foreign patents which should be obtained. But the purpose having been, as I conclude it was, to give the complainant the exclusive right to manufacture in this country, (within the limits of its grant,) for sale in the foreign countries named, the use of the word "exclusive," or its equivalent, which otherwise would have been meaningless, was apt and necessary; and it was also important to say, "as far as we can control the same," because, in respect to such exclusive right to sell abroad, the owners could exercise a control much more effective than in respect to a right which was not exclusive by refraining on their own part from competitive sale abroad of machines made either in this country or elsewhere, by binding subsequent grantees or licensees to respect complainant's right, and by making or attempting to make no grant to others, either under these patents or any obtained abroad, inconsistent with the grant to the complainant.

The word "herein," as used in the sentence under consideration, includes the whole instrument,—the clause in which it is found

as well as the preceding clause; and the phrase, "under the rights herein granted," has, as it seems to me, the same force as if the words were, "by right of this grant," or "under this grant." With such change there could be no question of the meaning. And without any change of words, the meaning of the clause may be demonstrated by transposition in this way: "And also, under the rights herein granted, the exclusive right, as far as we can control the same, to build harvesters and binders for sale in Europe," etc. Read in this way, the entire expression is harmonious, and just force is given to each word and phrase. After the grant to the complainant, the owners of the patents, and their subsequent grantees, who took right or title with knowledge of or subject to the first grant, had no right within the United States to build machines to be sold at home or abroad in the states or countries wherein the complainant had been given the exclusive right to sell, and such manufacture and sale would be an infringement of the rights of the complainant under the patent. Blatchford, J., in Ketchum Harvester Co. v. Johnson Harvester Co., 8 Fed. Rep. 586.

It follows that the machines containing the inventions, which the defendants have made in this country, and have sold in England, France, and Germany, have been made in infringement of the rights of the complainant under the patents; and that, since the fact that the defendants propose to continue such manufacture and sale is admitted, the complainant is entitled to the temporary injunction prayed, and it is so ordered.

Since the foregoing was written the complainant has presented a second motion, asking a temporary order restraining the defendants against interference with and threatened infringement of complainant's rights within its territory in the United States, but the defendants deny that they have interfered as charged, and that they have any purpose to infringe, and the proof offered by the complainant is insufficient. The motion is therefore overruled.