## Case No. 4,015.

### DORSEY REVOLVING HARVESTER RAKE CO. et al. v. BRADLEY MANUF'G CO.

### JOHNSON et al. v. SAME.

[12 Blatchf. 202;[1] Ban. & A. 330.]

Circuit Court, N. D. New York. June 16, 1874.

PATENTS—INFRINGEMENT SUITS — PARTIES PLAINTIFF—ASSIGNMENT AND LICENSE — TERRITORIAL LIMITATIONS—INJUNCTIONS.

1. In a suit in equity, brought on letters patent for a machine, to restrain the defendant from making the patented machines and selling them to parties who buy them for exportation to and use in foreign countries, it is proper to join, as plaintiffs, the owner of the legal title to the patent with the holder of the exclusive right to make and vend the patented invention for use in foreign countries.

2. A patentee has the right to grant the right to make and sell the patented invention within specified territory, and to make that right exclusive in the grantee, and yet limit the use of the thing so made and sold, within specified limits.
[Cited in Heaton Peninsular Button-Fastener Co. v. Dick, 55 Fed. 25.]

3. A patentee, while granting to another a right to make or to make and sell, may retain to himself the exclusive right to make and sell for export or use in other countries.

4. Whether the grant of a right to make and sell carries with it a right to use, quere.
[See Adams v. Burks, Case No. 50. note.]

5. Whether, when a mere licensee to make and sell a patented machine within specified limits, sells a machine so made to another, the machine may be used anywhere, quere.

6. Where there did not appear to be danger of irreparable injury to the plaintiff, and his right was not clear, a preliminary injunction was refused.

[These were bills in equity. brought, respectively, by the Dorsey Revolving Harvester Rake Company and the Johnson Harvester Company against the Bradley Manufacturing Company, for the alleged infringement of letters patent No. 14,350, granted to O. Dorsey, March 4, 1856, reissued June 9, 1868 (No. 2,982), and by Samuel Johnson and the Johnson Harvester Company against the same defendant for the alleged infringement of patent No. 46,300, granted to S. Johnson, Feb. 7, 1865. reissued May 26, 1868 (No. 2,951).]

George Harding, for plaintiffs.

George F. Comstock and Nathaniel B. Smith, for defendant.

WOODRUFF, Circuit Judge. In each of these cases motions were made by the complainants for an injunction pendente lite. The motions were founded upon the respective bills of complaint, and affidavits pertinent to the several suits, and upon other affidavits and papers pertinent to both; and the motions are resisted upon affidavits used for the purposes of both motions. The object of the motions respectively is to restrain the alleged infringement of patents upon which the suits respectively are founded. The defendants object, in each case, that there is an improper joinder of complainants, because the bills respectively aver that the Johnson Harvester Company have the exclusive right to make and vend the patented inventions for use in foreign countries; also, that the defendants have a right to make and sell within the territory within which they manufacture and sell, without restriction as to the use or place within which the machines in question may be used.

The respective inventions are improvements in harvesters, and especially the harvester rake, one being patented to Owen Dorsey, and assigned to the Dorsey Revolving Harvester Rake Company, upon which patent the first of the above-named suits is founded; and the other being patented to Samuel Johnson, upon which the second suit is founded. That the defendants are making and selling machines embracing these inventions is not denied; and it appears, also, that they are making and selling to parties who buy them for exportation to and use in foreign countries; and this is claimed to infringe the patents.

My conclusions upon the bills of complaint and affidavits, and upon the questions thereupon arising, may be briefly stated. However the parties differ as to the construction and effect of the transactions in question, there is little, if any, dispute about facts.

1st. The suggestion that there is an improper joinder of plaintiffs, if that were a reason for withholding an injunction to restrain an infringement of the rights of one of the complainants, will not avail here. An exclusive license to manufacture for a special use or purpose is not an assignment of the patent, which renders the joinder of the patentee, in a suit for infringement, improper. It is not within the definition of an assignment, in the statute. It does not convey the patent, or any specified territory within which the licensee has the exclusive right to make, vend or use, and is not within any case which has held even that the licensee could sue without joining the person in whom the legal title to the patent is vested, still less within any case holding that the latter may not join in the suit in equity; and, in general, one who has granted such exclusive license has an interest

[1] [Reported by Hon. Samuel Blatchford. District Judge; reprinted in 1 Ban. & A. 330; and here republished by permission.]

in sustaining the right and protecting his license. Presumptively, his own rights would be affected by an adverse adjudication, if called on by the licensee to defend his license.

2d. I have no doubt of the right of a patentee to grant the right to make and sell the patented invention within specified territory, and to make that right exclusive in the grantee, and yet limit the use of the thing so made and sold, within specified limits. The right to make and vend, and the right to use, are completely severable; and, while a grant of the right to make and sell to others might be deemed to imply the right in the purchasers to use the thing purchased, a patentee may restrict the use. The patent as effectually secures to him a monopoly of the right to use as it does of the right to make. The patentee, or his assignee, may, therefore, give the exclusive right to make and sell for use within certain territory; and such a restriction would be entitled to enforcement. The case of Adams v. Burks, 17 Wall. [84 U. S.] 453, recently decided in the supreme court, is in no conflict with this. In that case, there was a complete transfer of the exclusive title to the invention within and for a specified territory. There was no qualification of the right to use, either expressed in the grant or inferrible (according to the views expressed in the opinion of the court) from the nature of the subject or the circumstances of the case. It is clear that the patentee may grant the right to use within any specified place, town, city or district, and he may make such right of use exclusive; and I deem it no less clear that he may limit the right to manufacture for such use. What the terms of any particular grant or license import, may be and is often a question. But, the right of the patentee to confer upon others such qualified privilege, whether of making, of selling to others, or of using, as he sees fit, whether within specified limits or under limitations of quantity, or number, or restricted uses, does not seem deniable. Whether, in a given case, he has given a privilege with such qualifications, or whether his grantee or licensee has an unrestricted right, without any limitation as to quantity, number or use, must depend upon the facts existing in each case.

3d. The complainants have not vested in themselves, by virtue of their patents, any exclusive right to sell their patented inventions in foreign countries; and, therefore, any one, having possession of their harvesters there, may sell and use them there, and any one there may make, sell and use them. But, a patentee having the exclusive right to make them in this country, and having the right, above stated, to grant that right to others, may qualify the privilege which he confers. A patentee may find it greatly to his advantage, and greatly profitable, to supply a foreign demand for an article of American manufacture, and may be able successfully to compete with foreign machinists in the making.

In such case, his monopoly of the right of making and selling here is of great value, because no other one can make in this country and compete with him. I know of no reason, in law or in equity, why, if he give to another a right to make, or to make and sell, he is not at full liberty to retain to himself the advantage and profit of competing in foreign markets, by retaining the exclusive right to make and sell for export or use in other countries; not because the monopoly includes such other countries, but because his actual monopoly does include all making and selling here, with all the advantages which are incident thereto.

4th. The defendants in these cases are making and selling the patented harvester, and are so making and selling for the purpose of exportation, or under contracts, with knowledge and intent that the purchasers are thereby supplying, and will supply, the foreign market.

5th. In respect to the Dorsey patent, upon which the first above named suit is founded, the defendants show no assignment or license conferring upon them the right to use the patented invention. I do not discover in the papers anything which imports such a right, at law or in equity. Counsel for the defendants seem to have assumed that the agreement with Johnson, the patentee named in the other suit, and the correspondence in relation to his harvester, applied to the Dorsey patent also. I do not find in either anything to warrant the assumption; and, especially, I observe that the Dorsey patent expired on the 4th of March, 1870, and was, on or before that day, extended for the term of seven years. The defendants have failed to show a right under such extension.

In the first case, then, the defence rests upon a statement in the affidavit of Mr. Harding, the solicitor therein, and "agent for the Dorsey Revolving Harvester Rake Company, and for the reissued patent of Samuel Johnson, No. 2,951, dated May 26th, 1868," as follows: "that it was agreed, that the right to build what was called 'single reapers,' under said patents, should be given to C. C. Bradley & Son, to manufacture such machines as might be required for use in Minnesota, Wisconsin, Pennsylvania, and New York, except the river counties, so long as, and on condition that, they kept said territory supplied with such machines as are required therein, and paid the license fee." The defendants deny that there was any condition annexed to the privilege agreed to be given them. This statement does not discriminate, in terms, between the two patents, one to Dorsey and one to Johnson. It may refer to the Johnson original and reissued patents. The agreement produced by the defendants refers to the Johnson patent only. If, however, this statement be taken most strongly against the complainants, to include also the Dorsey patent, then it declares that the defendants were only to have the privilege of supplying

the states mentioned with machines for use therein; and this is not at all inconsistent with the loose and indefinite terms of the agreement in relation to the Johnson patent, to be presently further noticed. The defendants, therefore, fail to show a right to manufacture and sell without restriction as to the use of the harvesters at any time. Still less do they show such a right now existing under the extension of the Dorsey patent. The complainants in the first above named suit are, therefore, entitled to the injunction sought by their motion, restraining the defendants from infringing the Dorsey patent, extended as described in the bill of complaint.

6th. As to the Johnson patent, upon which the second above named suit is founded, I feel great hesitation. There was, in relation to that, a written agreement, which contemplated granting to C. C. Bradley & Son "their choice in what territory they may want, at a reasonable price, for the right to build and sell in said territory." Subsequent negotiations, evidenced by correspondence, indicate subsequent and continuous recognition of the right of C. C. Bradley & Son to build and sell, though the precise limits of the territory in which they were to be permitted to build and sell has been the subject of negotiation and fluctuation. As already suggested, the agreement is not very specific or determinate. It is not clear that Bradley & Son were, under this agreement, to have anything more than a license. Nor is it stated that they are to have an exclusive license in any territory. They seem, in the correspondence, to have claimed that; and yet such claim is not conceded, as appears by what they call "encroachments" on them. On the other hand, there is, in this agreement, no express restriction upon the right to make and sell in such territory as might be assigned to them, which in terms confines the use of the harvesters which they make and sell to the same territorial limits. Hereupon, several interesting questions arise. Does the right to make and sell carry with it the right to use? If, by implication, the right to use is incident to, or implied in, the right to make and sell, does not the limitation of the right to make and sell, to specific territorial limits, operate with equal strictness upon the right of use which is incidental thereto or is so implied? Is the incident broader in its scope than the principal grant? If it be true, as claimed, that, when one who has the whole right in the invention, to make, sell and use, (either for the whole or a part of the United States), sells a machine, it passes from under the dominion of the patent, and may be used anywhere, does that follow when a mere licensee to make and sell within specified limits sells the patented invention to another? Does the cautiously guarded decision of the supreme court in Adams v. Burks, 17 Wall. [84 U. S.] 453, carefully limited to the precise case then under consideration, reasonably import an affirmative to the last question? Especially, may one having a license to make and sell within a limited territory only, deliberately contract to supply the patented invention for use in other territory, provided his manufacture and his actual negotiation of sales are within the privileged limits, and may he practically avail himself of the markets of the whole country?

The rights of the parties in respect to the Johnson patent are by no means clearly settled. The question whether the defendants are to be regarded as mere licensees, or as having an interest in the patent, is to be determined. Confessedly, in the present actual condition of things, their interest, of whatever extent, is equitable rather than legal; but that does not prejudice their standing in a court of equity. Again, it is claimed that the license to which C. C. Bradley & Son were entitled was personal to them, and could not be assigned, and, therefore, the defendant, a corporation, has no right whatever, either at law or in equity, to make or sell the patented invention anywhere. The question, whether the right or privilege of C. C. Bradley & Son could be assigned, is not to be determined solely by applying to it the term "license." Whether a license is or is not assignable, is to be determined not merely by the term "license," but by an inquiry into the fair meaning and intention of the parties; and, it may be affected not only by the words of license, but by the nature of the transaction, the consideration paid, and other circumstances showing that an assignable right was conferred. And yet that question is here involved touching a right or privilege which was to be evidenced by writing, which, in the preliminary agreement, is not well defined, and which lies in what may be found to be equitable between the parties.

There are some expressions, in the negotiations between the parties, which would seem to contemplate the possession, by C. C. Bradley & Son, of exclusive territorial rights; and if it should be found that the defendants are so entitled, they may be within the case of Adams v. Burks, above referred to.

If there appeared to be danger of irreparable injury to the complainants, I might feel called upon to decide these questions above referred to, or, at least, such of them as are material to the motion. But no such danger appears; there is no allegation that the damages cannot be easily ascertained, nor that the defendants are not of sufficient pecuniary responsibility to answer for all profits realized by them, and for all damages sustained by the complainants pendente lite. I do not think the case depending upon the Johnson patent developed so fully, and the right so clear, that the injunction should be granted upon the papers now before me. The motion in the suit of Johnson and others

against the defendants must be denied. ·But, if the complainants deem it important, such denial may be without prejudice to a renewal upon further proofs. The motion in the suit of the Dorsey Company must be granted.

[NOTE. For another case involving patent No. 14,350, see Dorsey Harvester Revolving Rake Co. v. Marsh, Case No. 4,014.]