BULLOCK ELECTRIC & MFG. CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. March 8, 1904.)

No. 1,242.

1. CONTEMPT—VIOLATION OF INJUNCTION—NATURE OF PROCEEDINGS TO PUNISH.

The willful violation of an injunction by a party to the cause is a contempt of court, which constitutes a criminal misdemeanor, and the proceeding to punish therefor is in its nature a criminal proceeding, entirely independent and distinct from the suit in which the injunction decree was entered, and a judgment of conviction therein is reviewable by writ of error, and not by appeal.

2. SAME—REVIEW—JURISDICTION OF CIRCUIT COURT OF APPEALS.

A judgment of a Circuit Court imposing a fine on a party for contempt for the violation of an injunction is a judgment in a criminal case, and if unconditional and absolute, so that nothing remains but to execute it, is final and reviewable by the Circuit Court of Appeals on a writ of error.

3. CONTRIBUTORY INFRINGEMENT.

The making and selling of a single element of a patented combination, with the purpose and expectation that such element should be sent to a foreign country and be there used in combination with other elements, or in the practice of a method covered by the patent, is not contributory infringement, inasmuch as there was no intent that the element should be put to an infringing use; the protection of the patent not extending beyond the limits of the United States.

4. PATENTS—INJUNCTION AGAINST INFRINGEMENT—ACTS CONSTITUTING INFRINGEMENT.

A preliminary injunction was granted restraining the defendant in an infringement suit from "the making, using, or selling of any apparatus embodying the inventions recited or specified" in the claims of three patents. The first two covered combinations of mechanical elements, one element in each being a motor which operated by the method of the third patent, covering such method alone. Pending the suit defendant made and shipped to a customer in Canada the motor of the patent, with the expectation and intent that it would be there used in the devices of the combination claims of the first two patents and in the practice of the method of the third patent. Held, that defendant was not chargeable with infringement nor guilty of a violation of the injunction, since (1) the making or selling of a single element of a combination is not an infringement of a patent covering the combination, but not the elements separately; (2) the making or selling of a machine adapted to practice the method of the third patent was not an infringement of such patent; and (3) the use of the patented combinations, or the practice of the patented method, in Canada, was not an infringement of the United States patents, and consequently defendant was not chargeable with contributory infringement.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

The Westinghouse Electric & Manufacturing Company filed an original bill against the Bullock Electric & Manufacturing Company to restrain the infringement of certain letters patent granted to Nikola Tesla, being patents Nos. 381,968, 382,279, and 382,280. Upon the pleadings and upon certain affidavits the court below, upon motion and notice, granted an injunction pendente lite, restraining the defendant, its officers, agents, and servants, "from infringing upon claims 1 and 3 of patent 381,968, claims 1, 2, and 3 of patent 382.279, and the claim of patent 382,280, or any of them." The injunction as actually issued and served commanded the defendants to "desist from making, using, or selling any apparatus embodying the inventions recited or specified in claims 1 and 3 of patent 381,968, claims 1, 2, and 3 of patent 382,279, and the claim of patent 382,280, or any of them, or in any manner infringing upon the rights of the complainant thereunder." Subsequent to the service of this injunction the defendant made and shipped a certain motor to Canada to be there used as an element in the combinations covered by the claims involved of patents Nos. 381,968 and 382,279, and in the method claim of patent No. 382,280. Upon a motion supported by affidavits, and upon the admission of counsel representing the defendant that the motor complained of had been made and shipped to Canada to be there used in the devices of the patent, and that it was installed and so used, the court adjudged that the claims of the patents involved had been thereby infringed and the preliminary injunction violated, and that the defendants were in contempt, and ordered to pay a fine of $500. A bill of exceptions was allowed, and this writ of error sued out to reverse this judgment.

Arthur Stem, George Heidman, and Clarence E. Mehlhope, for plaintiff in error.

Frederic H. Betts, Thomas B. Kerr, and C. Hammond Avery, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. The willful violation of an injunction by a party to the cause is a contempt of court constituting a specific criminal offense. Ex parte Kearney, 7 Wheat. 38, 42, 5 L. Ed. 391; Crosby Case, 3 Wilson, 188; New Orleans v. Steamship Co., 20 Wall. 387, 392, 22 L. Ed. 354; Hayes v. Fischer, 102 U. S. 121, 26 L. Ed. 95; 4 Ency. Pl. & Pr. 766 et seq.

It is immaterial to consider the distinction sometimes noticed between criminal and civil contempts, inasmuch as both kinds involve the vindication of the authority of the court, whether the remedy incidentally inure to the benefit of a party or not. Cyclo. Law & Proc. 6 et seq.

The proceeding to punish for a contempt is in its nature a criminal proceeding, whether the result be partially remediable or not, and the same rules prevail which govern in the trial of indictments, the defendant being entitled to the benefit of any reasonable doubt. Accumulator Co. v. Consolidated Electric Co. (C. C.) 53 Fed. 793; In re Acker (C. C.) 66 Fed. 291; Harwell v. State, 10 Lea, 544; 4 Ency. Pl. & Pr. 768 et seq.; U. S. v. Jose (C. C.) 63 Fed. 951.

Although the contempt consist in the violation of an injunction granted by a court of equity, the proceeding for its punishment "is a new and distinct proceeding, and is quite independent of the equities

of the case on which the decree is founded," and "an appeal is not an appropriate remedy for obtaining a review." City of Frankfort v. Deposit Bank of Frankfort (decided at February session of this court) 127 Fed. 812; New Orleans v. Steamship Co., 20 Wall. 387, 392, 22 L. Ed. 354; In re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782.

Is it reviewable by a writ of error? A contempt proceeding is classified as a misdemeanor and not as a felony. In re Acker (C. C.) 66 Fed. 291. Misdemeanors are reviewable by this court upon writ of error by virtue of the broad appellate powers conferred by the act of March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 547], establishing Circuit Courts of Appeal, and defining and regulating the appellate powers of United States courts. If, therefore, the imposition of the fine complained of "was a judgment in a criminal case" as it is defined to be in New Orleans v. Steamship Co., 20 Wall. 387, 392, 22 L. Ed. 354, it was a judgment in a misdemeanor case; for contempts are universally classified as misdemeanors, and not felonies. In re Acker (C. C.) 66 Fed. 291. If a judgment in a misdemeanor case, it is reviewable upon writ of error by this court. This conclusion was reached by the Circuit Court of Appeals for the Second Circuit in Gould v. Sessions, 67 Fed. 163, 14 C. C. A. 366. But in Nassau Electric R. Co. v. Sprague Electric Co., 95 Fed. 415, 37 C. C. A. 146, and Christensen Engineering Co. v. Westinghouse Air-Brake Company (decided Feb. 15, 1904) 129 Fed. 96, writs of error were dismissed upon the authority of In re Debs, 158 U. S. 564, 573, 15 Sup. Ct. 900, 39 L. Ed. 1092.

In the statement of the Debs Case, at page 573, 158 U. S., and page 903, 15 Sup. Ct., 39 L. Ed. 1092, it is stated that the defendants in that case had "applied to this court for a writ of error, and also one of habeas corpus. The former was denied, on the ground that the order of the Circuit Court was not a final judgment or decree." The only report of the decision on the writ of error is found in 159 U. S. 251, 15 Sup. Ct. 1039, where the statement is, "Petition denied."

The Supreme Court had no jurisdiction in respect of writs of error in misdemeanor cases, and the writ of error upon this ground was necessarily denied. The reporter's statement that it was denied because the order "was not a final judgment or decree" is doubtless an error. Certainly we do not feel justified in departing from the well-settled doctrine, so often enunciated in former cases, in respect of the distinctness of a judgment imposing a fine for a contempt from the case in which the disobeyed order was made, upon so slender an authority. If the judgment, as in this case, was in fact unconditional and absolute, so that nothing remained but to execute it, it was in every sense a final judgment.

The claim that a defendant in such circumstances must await the final result of the cause in which the injunction was granted before he can have the judgment inflicting fine or imprisonment reviewed upon the theory that the judgment is not final is absolutely unsupportable. If it be an independent and distinct proceeding from the residue of the case, it will be no more final after that case has reached a final decree than when the fine was imposed. To say that he may pay his fine

or endure his imprisonment and review the legality of the matter at some indefinite time in the future is to deny, in effect, the right of review at all. The motion to dismiss the writ is denied.

Was the defendant, on the conceded facts of the case, guilty of contempt as matter of law? Upon this writ of error no question as to whether the injunction was rightly or wrongly, providently or improvidently, issued can arise. The court confessedly had jurisdiction of the parties and of the subject-matter, and the bill of exceptions recites that the temporary injunction was issued upon bill, answer, exhibit, affidavits, "and upon the agreement of the defendant."

Neither is the result to turn upon any question of conflicting fact, for it is not the province of a reviewing tribunal to weigh the facts upon a writ of error.

The claims which defendant was enjoined from infringing were the first and third of patent No. 381,968, granted to Nikola Tesla, May 1, 1888, and read as follows:

(1) "The combination, with a motor containing separate or independent circuits on the armature or field magnet, or both, of an alternating current generator containing induced circuits connected independently to corresponding circuits in the motor, whereby a rotation of the generator produces a progressive shifting of the poles of the motor, as herein described."

(3) "The combination with a motor having an annular or ring-shaped field magnet and a cylindrical or equivalent armature, and independent coils on the field magnet or armature, or both, of an alternating current generator having correspondingly independent coils and circuits including the generator coils and corresponding motor coils, in such manner that the rotation of the generator causes a progressive shifting of the poles of the motor in the manner set forth."

The first, second, and third claims of patent No. 382,279, granted May 1, 1888, to Nikola Tesla, and are in these words:

(1) "The combination, with a motor containing independent inducing or energizing circuits and closed induced circuits, of an alternating current generator having induced or generating circuits, corresponding to and connected with the energizing circuits of the motor, as set forth."

(2) "An electro-magnet motor having its field magnets wound with independent coils and its armature with independent closed coils, in combination with a source of alternating currents connected to the field coils, in combination with a source of alternating currents connected to the field coils and capable of progressively shifting the poles of the field magnet, as set forth."

(3) "A motor constructed with an annular field magnet wound with independent coils and a cylindrical or disk armature wound with closed coils, in combination with a source of alternating currents connected with the field magnet coils, and acting to progressively shift or rotate the poles of the field as herein set forth."

And the single claim of patent No. 382,280, granted May 1, 1888, to the same patentee, which reads as follows:

"The method herein described of electrically transmitting power, which consists in producing a continuously progressive shifting of the polarities of either or both elements (the armature or field magnet or magnets) of a motor by developing alternating currents in independent circuits, including the magnetizing coils of either or both elements, as herein set forth."

Confessedly the five claims of the first two patents are combination claims. The single claim of the third patent is not a mechanical claim, but a claim for a method of electrically transmitting power. A

motor constructed according to the specifications of the patent is one of the elements in each of the combination claims, and the evidence tended to show that such a motor must operate by the method of the third patent.

The plaintiff in error was adjudged to be in contempt because, pending the injunction, it made and shipped to a customer in Canada the motor of the patent, with the expectation and intent that it would be there used in the devices of the combination claims and in the practice of the method of transmitting electrical power protected by the claim of the method patent. Was this, as matter of law, a contempt of the authority of the court?

The injunction forbid "the making, using, or selling of any apparatus embodying the inventions recited or specified" in the claims of the three patents heretofore set out. The monopoly of a patent extends to the making or selling, as well as the using, of the patented device within the United States. Adams v. Burks, 17 Wall. 453, 456, 21 L. Ed. 700; Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 291, 25 C. C. A. 267, 35 L. R. A. 728; Dorsey Rake Co. v. Bradley M. Co., 12 Blatchf. 202, Fed. Cas. No. 4,015.

While it is true that the monopoly of the plaintiff's patents did not extend beyond the limits of the United States, yet it would be no defense to say that the patented article had been made in the United States only for the purpose of being sold and used in a country to which the protection of the laws of the United States did not extend. The patentee is entitled to monopolize the making of his device in the United States as well as a monopoly of there selling or using it. Dorsey Harvester Co. v. Bradley Co., 12 Blatchf. 202, Fed. Cas. No. 4,015; Ketchum Harvester Co. v. Johnson Co. (C. C.) 8 Fed. 586; Adrian Platt Co. v. McCormack Co. (C. C.) 55 Fed. 288. Gould v. Sessions, 67 Fed. 163, 14 C. C. A. 366, is not in conflict, for in that case the only question concerned the alleged violation of an injunction against the future making, selling, or using of the patented article.

The articles sold in supposed violation of the temporary injunction had been made before the injunction was granted, and pending the injunction were shipped to Canada and there sold. There had been, therefore, no violation of the injunction, because there had been no making or selling or using of the patented device after the allowance of the injunction, within the limits of the United States. But it is elementary that neither the making, selling, nor using of one element of a combination is infringement. Prouty v. Ruggles, 16 Pet. 336, 10 L. Ed. 985; The Corn Planter Patent, 23 Wall. 181, 224, 23 L. Ed. 161; Rowell v. Lindsay, 113 U. S. 97, 101, 5 Sup. Ct. 507, 28 L. Ed. 906. In the corn planter patent Mr. Justice Bradley said:

"Where a patentee, after describing a machine, claims as his invention a certain combination of elements, or a certain device, or part of the machine, this is an implied declaration as conclusive, so far as that patent is concerned, as if it were expressed that the specific combination or thing claimed is the only part which the patentee regards as new. True, he or some other person may have a distinct patent for the portions not covered by this; but that will speak for itself. So far as the patent in question is concerned, the remaining parts are old or common and public."

In Rowell v. Lindsay, Mr. Justice Wood said:

"The patent of the plaintiffs is for a combination only. None of the separate elements of which the patent is composed are claimed as the invention of the patentee; therefore none of them, standing alone, are included in the monopoly of the patent."

It must follow, therefore, that, unless there be something to take this case out of the general rule, the making or selling or using of a single element of a combination patent does not per se constitute an infringement of a combination claim. Neither can it be said, in a legal sense, that any one element of a combination patent is an "apparatus embodying the invention," within the meaning of the injunction which the defendant is supposed to have disobeyed.

It may be true, as claimed, that the Tesla motor constitutes the real essence of the three Tesla inventions covered by the claims of the patents in suit. Tesla, however, neglected to claim the motor as a separable device. He deliberately elected to claim it only as he claimed the other elements of his combination claims, and thereby abandoned any claim to its novelty or to a monopoly of its use, except as a part of one or other of his combination claims. The method claim is not for any apparatus at all. The mere fact that the Bullock Company made and sold such a motor does not per se constitute an infringement of such a method claim. We are not now dealing with the question of contributory infringement for that will be considered later. What we decide is that the mere fact that one has made and sold an apparatus adapted to be used in following the methods of Tesla's method claim does not constitute infringement. He is not entitled to extend that claim so as to include apparatus adapted to its practice. A licensee thereunder may practice the method with any motor adapted to such method, and we see no reason, if the motor itself is not patented, why such a licensee might not supply himself with a motor adapted to so operate from any manufacturer.

But the Circuit Court found that after the granting of the injunction pendente lite the defendant company made and shipped to one John McDougal, of the Caledonia Iron Works, Montreal, Canada, a motor made according to the description of the Tesla patents in suit, and that this was done with the intent and expectation that the motor would be there installed and used in the devices of the patents in suit. Judge Thompson held upon these facts that the defendants "had not only infringed the plaintiff's patents by contributing to the device set up in Canada, but directly infringed the claim of patent No. 382,280."

But did the defendants infringe either of the combination claims, or disobey the injunction of the court, by making and sending to Canada a single element of those claims with the intention and for the purpose of being there used in one or other of the combinations of the patent. The monopoly of the patents did not extend to Canada. The patented devices were open to be there made or sold or used because the monopoly of the patent is limited to the United States and its territories. Unless, therefore, the making and selling of a single element of a patented device, within the limits of the United States, with the intention that it shall be sent without the United States, and there used in association with the other elements of the combination, constitutes

infringement, the defendants did not disobey the order of the court. But unless the making and sale of the single element was with the intention and purpose of aiding and abetting another to infringe there would be no contributory infringement under the well-settled law upon that subject.

No better definition of contributory infringement can be found than that given by Judge Taft when speaking for this court in Thomson-Houston Electric Co. v. Ohio Brass Works, 80 Fed. 712, 721, 26 C. C. A. 107, where that learned judge said:

"It is well settled that when one makes and sells one element of a combination covered by a patent with the intention and for the purpose of bringing about its use in such a combination he is guilty of contributory infringement, and is equally liable to the patentee with him who in fact organizes the complete combination. * * * An infringement of a patent is a tort analogous to trespass or trespass on the case. From the earliest times, all who take part in a trespass, whether by actual participation therein, or by aiding and abetting it, have been held to be jointly and severally liable for the injury inflicted. There must be some concert of action between him who does the injury and him who is charged with aiding and abetting, before the latter can be held liable. When that is present, however, the joint liability of both the principal and accomplice has been invariably enforced."

The intent and purpose that the element made and sold shall be used in a way that shall infringe the combination in which it is an element constitutes the necessary concert of action between him who furnished the single part and he who actually does the injury by the assembling and using of all the parts in such a way as to be an infringement. This principle runs through all the cases upon contributory infringment. Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 297, 25 C. C. A. 267, 35 L. R. A. 728; Saxe v. Hammond, Fed. Cas. No. 12,411; Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100; Thomson-Houston Co. v. Kelsey Electric Co., 75 Fed. 1005, 22 C. C. A. 1; German-American Filter Co. v. Loew Filter Co. (C. C.) 103 Fed. 303, affirmed 107 Fed. 949, 47 C. C. A. 94.

In Snyder v. Bunnell (C. C.) 29 Fed. 47, Judge Coxe gave his emphatic approval to the principle laid down by Judge Shipley in Saxe v. Hammond, cited above, where it was said that "the mere manufacture of a separate element of a patented combination, unless such manufacture be proved to have been conducted for the purpose and with the intent of aiding infringment, is not in and of itself infringement." That the single element was made and sold was with the intent and purpose of aiding another in infringing must appear, or the necessary concert of action will be missing. This may be shown presumptively, as it is when the article is incapable of any other use than an infringing one. If, on the other hand, it be adapted to other uses "the intention to assist in infringement must be otherwise shown affirmatively." Thomson-Houston Co. v. Ohio Brass Works, 80 Fed. 712, 723, 26 C. C. A. 107. These principles we think determine this case.

The finding that the intent and purpose in making and selling this motor was that it should be used in the patented devices in Canada is a finding against any infringing purpose. It would not be an infringement to put the motor to the use intended, because that use was beyond the protection of the patent. The defense is as complete as

if the intent had been to furnish the motor to one having a license to make, sell, and use. In neither case would there be an intent to assist in an infringement, and without such intent the plaintiff in error was not infringing the patents or disobeying the order of the court.

What we have said applies as well to the method patent as to the combination claims. There must be shown an intent to assist another in an infringing use of the patented method. There being no intent to provide means by which another might unlawfully use the Tesla method, there is no contributory infringement.

The judgment, for these reasons, must be reversed, with directions to discharge the rule to show cause.

Following will be found the opinion of the court below (THOMPSON, District Judge):

This suit was brought to enjoin defendant of letters patent Nos. 381,968, 382,279, and 382,280 and for an accounting, etc. On the 2d day of August, 1902, an injunction was issued pendente lite restraining the defendant, its officers, etc., "from making, using, or selling any apparatus embodying the inventions recited or specified in claims 1 and 3 of patent No. 381,968, claims 1, 2, and 3 of patent No. 382,279, and claims of patent No. 382,280, or any of them, or in any manner infringing upon the rights of the complainant thereunder." Afterwards, to fill an order previously given by John McDougal, of Montreal, Canada, the defendant made, at its works, in the United States, near Cincinnati, in the state of Ohio, and on the 27th day of April, 1903, shipped to John McDougal, at Montreal, Canada, a 500 horse power induction motor, 13 feet in diameter, with 44 poles and operated from a "60 cycle, 2,200 volt, 3 phase circuit," the factory cost of which was $11,265.20.

This defendant admits that his motor was made and shipped to McDougal for the express purpose of being used in the device of the patents in suit, and that it was so used, but insists that the plaintiff's patents were not infringed thereby, because the making of the device took place in Canada. This claim is based on the assumption that there can be no making of a combination device, within the meaning of the patent laws, until all its parts are assembled and joined together, in accordance with the teachings of the letters patent, and as the assembling of the parts and the completion of the device in question took place in Canada, where the patent laws of the United States are inoperative, the patents of the plaintiff are not infringed. If this be true, the defendant, in evasion of the patent laws of the United States, may make all the parts of the device in the United States, ship them to Canada, and there assemble them and sell the device to its customers in disregard of the plaintiff's rights—may thus appropriate the plaintiff's invention to its own use without making compensation therefor.

But is this true? In issuing the patents in suit the government of the United States granted to the plaintiff "the exclusive right to make, use, and vend the invention or discovery throughout the United States and the territories thereof," and any making, use, or sale thereof within the territory of the United States, against the will of the plaintiff, is an infringement of its monopoly, and a violation of the patent laws of the United States. Neither the defendant nor McDougal were licensees of the plaintiff, but, on the contrary, joined in appropriating the plaintiff's invention to their own use without the plaintiff's consent and against its will. What the defendant did was done in the United States for the express purpose of enabling McDougal to complete the appropriation in Canada, not as the licensee of the plaintiff, but against the plaintiff's will, and was an infringement of the plaintiff's patents, and the wrong is not lessened by the fact that McDougal is not amenable to the laws which the defendant has violated. In making the motor the defendant not only infringed the plaintiff's patents by contributing to the device set up in Canada, but directly infringed the claim of letters patent No. 382,280, which provides that "the method herein described of electrically transmitting power,

which consists in producing a continuously progressive shifting of the polarities of either or both elements (the armature or field magnet or magnets) of a motor by developing alternating currents in independent circuits, including the magnetizing coils of either or both elements, as herein set forth."

The cases of Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879, 37 L. Ed. 766, and Gould v. Sessions, 67 Fed. 163, 14 C. C. A. 366, cited by the defendant's counsel, do not support defendant's claim. In Hobbie v. Jennison the assignee of the patent for Michigan sold the patented articles in Michigan, knowing that the purchaser intended to use them in Connecticut. As assignee of the patent for Michigan, he had the exclusive right to make, use, and vend the patented articles in Michigan without reference to where they might afterwards be used. The assignment contained no provision forbidding him to sell the patented articles to persons who might or would use them in other states.

In Gould v. Sessions, Judge Shipman says: "The record, which consists of the affidavits, without a finding of facts, shows that, after the injunction order had been served upon the plaintiffs in error, they shipped to Canada a quantity of the infringing articles, which had been made before the injunction, without previously offering them for sale, or notifying any one of their wish to sell. The goods were followed by one of the defendants, who sold them to a trunk dealer in Montreal, who had been a customer of Sessions', and had been in the habit of buying the noninfringing articles. Upon this naked state of facts, we are of opinion that there was no violation of the injunction order. The sale was made in Canada, of trunk catches then in Canada, to a Canadian trunk manufacturer, to be there placed upon trunks in the ordinary course of business, and, so far as is known, no one of the articles was thereafter used in the United States." In that case the infringing articles were made before the injunction was issued, and were afterwards shipped to Canada, and sold and used there. They were not sold or used in the United States, and were not made in the United States after the injunction order was issued. Judge Shipman further said: "Inasmuch as the articles were made before the injunction, the manufacturer was not in contempt of the court's order, and, as no preliminary arrangements for the sale were made in the United States, the sale did not come within the prohibition. It is probable that the Circuit Court had misgivings in regard to the good faith of the affiants, but, as there is no contradiction of their statements, we regard the question as one of law, upon a state of facts not in substantial controversy."

Here there is an intimation that if there had been a preliminary arrangement made in the United States for the sale of the infringing articles in Canada the sale would have come within the prohibition of the injunction. In the case at bar there is evidence which would perhaps justify the court in finding that the sale of the motor was made in the United States. The order for the motor was received by the defendant through its agent in Canada, but the contract was not made until the order was accepted by the defendant.

Upon the evidence presented by the affidavits and the admissions of the defendant, through its counsel, the court finds that the defendant made the motor in violation of the order of injunction, thereby committing a contempt of court, for which it should be punished.

It is urged in mitigation of the penalty to be imposed that the defendant acted under the advice of counsel and believed that it might lawfully make the motor. The defendant, however, made the motor in deliberate disregard of the plaintiff's rights. The defendant knew that it was to be used in the device of the patents in suit, and made it expressly for that purpose. The defendant may have believed that it was acting outside of the scope of the order of injunction, but did not hesitate to violate the rights of the defendant.

The court cannot permit litigants to construe orders of injunction to suit their own convenience and interest. If they be in doubt as to what is required of them, they must come to the court for instruction or for such modifications or amendments of the order as will make their duty plain. Writs of injunction are issued to meet emergencies and to prevent irreparable injury, and these purposes may be defeated if the courts permit them to be trifled with or disobeyed. It must be understood that the court will require prompt and implicit obedience to such orders. A fine of $500 will be imposed upon the defendant, which must be paid within 10 days.