TUBULAR RIVET & STUD CO. v. O'BRIEN et al.

(Circuit Court, D. Massachusetts. July 29, 1898.)

No. 997.

1. PATENTS—INFRINGEMENT—VIOLATION OF LICENSE.

Where the owner of a patent on a machine for setting lacing studs licenses the use thereof on condition that the licensee shall only use studs manufactured by the licensor, such studs not being patented, it is an infringement for the licensee to use the machine for setting studs obtained from others in violation of the license.

2. SAME—CONTRIBUTORY INFRINGEMENT.

In such case, a third person who sells to the licensee studs of his own manufacture, knowing that they are to be used in the patented machine in violation of the terms of the license, and intending that they shall be so used, is guilty of contributory infringement, and will be enjoined.

In Equity.

Fish, Richardson & Storrow, for complainant.

William A. Macleod, for defendants.

LOWELL, District Judge. The bill makes the following allegations: The complainant is the owner of certain patents for setting lacing studs, which patents are embodied in machines made by it. These machines it does not sell, but licenses their use by a lease which provides that the licensees shall use in the machines only those studs which are manufactured by the complainant, and that, upon violation of any of the conditions of the lease, the right to the further use of the machine by the licensees is forfeited, and the complainant may retake possession thereof. The respondent sells, and offers for sale, to these licensees, studs of his own manufacture, well knowing that these studs are to be used in the complainant's machines in violation of the provisions of the lease and of the complainant's rights, and expressly intending that his studs shall be so used. He has induced and persuaded, and still induces and persuades, the licensees to break their contracts with the complainant, and to infringe its rights under the letters patent. Wherefore the complainant asks for an injunction limited in its

terms, and for an account. To this bill the respondent has demurred.

The complainant contends—First, that, by using the respondent's studs in its machines, in violation of the terms of the license, the licensees become infringers of the patent; and, second, that by selling his studs to the licensees, and by inducing and persuading the licensees to use his studs in the complainant's machines, and so to break their contracts with the complainant, the respondent has been guilty of the tort of "contributory infringement," so called.

That the first point is well taken I have no doubt. The difficulty is with the second. For both its contentions the complainant relies upon Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, decided by the circuit court of appeals for the Sixth circuit; and for the second contention upon Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., 22 C. C. A. 1, 75 Fed. 1005, decided in the circuit court of appeals for the Second circuit. Unless the decisions in these cases are opposed to some decision of the supreme court or to some other decision of some circuit court of appeals, I am practically bound by their authority. Beach v. Hobbs, 82 Fed. 916.

In the first-named case (Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co.), the bill was much like that in the case at bar, and the demurrer to it was overruled. It is true that the bill in the case at bar omits one statement made in the bill filed in Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co., viz. that the studs sold by the respondent were adapted solely to use in the complainant's machines; but in Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co. the court laid little stress upon this statement, and based its decision mainly upon the allegation, which is found in both bills, that the respondent induced the users of the complainant's machines to infringe the complainant's patent. Upon the authority of Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co., and especially upon that of Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., which case will be considered hereafter, the respondent's demurrer must be overruled.

By agreement of parties, the hearing upon the demurrer was coupled with a hearing upon the complainant's motion for a preliminary injunction. From the evidence in the case, I find that the respondent William O'Brien sold to some of the complainant's licensees studs of his own manufacture, well knowing that these studs were to be used in the complainant's machines, and that he sought a market for his studs without regarding whether those who bought them from him bought them for use in the complainant's machines or not. The respondent's studs could be used, and were sometimes used, in machines other than the complainant's, and that use, of course, was legitimate. The studs themselves were unpatented. The respondent knew the existence of the complainant's patent, and had sufficient knowledge of the terms under which the complainant's licensees operated the patented machines to understand that the use of his studs in them would constitute a

breach of the contract of lease. In answer to questions, he told the licensees that, if they got into trouble, he would himself furnish them with a machine of his own manufacture which would answer their purpose quite as well. Further than this, it was not shown that he persuaded or induced the licensees to infringe. For the purposes of this hearing, the validity of the patent in suit was admitted.

The question presented is this: Does one who sells an unpatented article to another, knowing the use to be made of it, become liable as a contributory infringer if the proposed use is an infringement of a patent?

In Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., ubi supra, the respondent sold "trolley stands," so called, an unpatented article, and the evidence showed that he sold them indifferently to those who intended to use them legitimately and to those who intended to use them as an element of the infringing manufacture of a patent article. The evidence of knowledge and intention in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co. was certainly weaker than in the case at bar, yet in the former case the court held that an injunction should issue, carefully guarded in its terms. "It sufficiently appears," said the court, "from the defendant's advertisements and affidavits, that it was ready to sell to any and all purchasers, irrespective of their character as infringers." The injunction "does throw upon the defendant the duty of careful investigation into the objects of the purchasers of its stands, and of an abandonment of indifference as to whether they are seeking to trench upon the rights of the owners of the patent."

The doctrine that one who furnishes materials, knowing their proposed use, becomes thereby a tort feasor, if the proposed use is a tort, is certainly novel as applied to most kinds of torts. A lumber dealer who knew that the boards he sold were to be made into a fence to be erected in a particular place could not, I think, be held to be a tort feasor, though the proposed fence constituted an obstruction to a right of way subsequently discovered. In Thomson-Houston Electric Co. v. Ohio Brass Co., 26 C. C. A. 107, 116, 80 Fed. 712, 721, it was said by Judge Taft, who took part in the decision of Heaton Peninsular Button-Fastener Co. v. Eureka Specialty Co., that "an infringement of a patent is a tort analogous to trespass or trespass on the case. From the earliest times, all who take part in a trespass, either by actual participation therein or by aiding and abetting it, have been held to be jointly and severally liable for the injury inflicted." With all due respect for the learned judge, it must be observed that the accuracy of the statement just quoted depends altogether upon the meaning attached to the words "participation," "aiding," and "abetting." In a sense, a trespass is aided if the trespasser is fed during the trespass. Yet it can hardly be contended that an infringer's cook is liable as a contributory infringer. Probably she would not be liable even if she knew of her master's wrongdoing. Again, no aid is more potent than money. Is one who lends money to an infringer liable

as co-infringer? Many patents cannot be infringed without a building in which to construct the infringing device. Is the landlord who lets the building to an infringer liable as a co-infringer? The particular act of participation, aiding, and abetting complained of in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co. was the sale of materials. Yet surely the maker of the pig iron out of which the offending appliances were made neither in that case nor in this has become guilty of any tort.

In the decisions above cited much importance is attached to the knowledge of certain facts possessed by the defendant. In order to determine precisely, and to state clearly, the correct principle of those decisions, we must discover exactly what is the knowledge which the defendant should have in order to become guilty of the tort of contributory infringement. Is it enough, in a case like that at bar, that the defendant should know the material use to which his studs are to be put, and nothing more? In most cases, if a man intends the material consequences of his act, and those consequences are a tort, he is, if liable at all, liable even though he is ignorant of the tortious nature of the consequences. Thus, if one directs the cutting of certain trees, and the trees cut are not his own, he is liable in trespass, though he had strong reasons to suppose them his own. If the sale of materials to an infringer be a tort under any circumstances, and if the common rule of torts just stated applies to the case, then it would seem that in this case the defendant is liable, even though he had never heard of the complainant's patent nor of its contract with its licensees. Yet such a conclusion seems inadmissible. If, however, this common rule, although applicable to most tort feasors, be deemed too severe to apply to contributory infringers, and if the defendant in a case like this must know something more than the material use to which his studs are to be put, is it sufficient that he should know that the use of his studs by his vendee would be a breach of a contract between that vendee and the complainant, without any knowledge of the complainant's patent? For the purposes of this action, I suppose that the last question should be answered in the negative, inasmuch as the tort alleged in this suit is not the inducing a third person to break his contract with the complainant, as in Lumley v. Gye, 2 El. & Bl. 216, but an actual participation with the third person as joint tort feasor in the tort of infringement.

All the cases above cited assert or imply that a necessary condition of the defendant's guilt is his knowledge of the complainant's patent. This knowledge is asserted in the bill of complaint in this case, and was relied on in argument. Ordinarily, ignorance of the existence of a patent does not justify infringement, but it seems that there is an exception in the case of some contributory infringers, and that the defendant in this case could not be enjoined unless he not only knew or should have known the physical destination of his studs, but also actually knew the existence of the complainant's patent. Regarding this last-mentioned actual knowledge, several further questions must be asked. Is the defendant liable as contributory infringer if he is merely notified that some

one claims a patent, in the infringement of which his acts may aid or participate? Or, in order to become liable, must a defendant have some special reason, such as an adjudication, to suppose the patent valid? If A., the holder of a patent on safes, notifies B., an iron master, who sells pig iron to C., that C. will use the iron in the manufacture of an infringing safe, can A. hold B. as contributing to the infringing manufacture of all the safes made with iron which has been sold by B. to C. after the notice given? Is the material man, on being notified that a patent is claimed, bound, at his peril, to ascertain the validity of the patent and the fact of infringement by his vendee?

It may be said that in a case like this the defendant is held liable, not because he furnished the complainant with the materials of infringement, but because his furnishing these materials to the infringer is evidence that he personally and actually participated in the infringing manufacture. This method of stating the liability does not remove the difficulties mentioned above. We have to ask in what cases the sale of materials is evidence of participation in manufacture, and what sort of evidence is relevant to show that a material man selling to an infringer does not participate. The defendant here did not, as in Wallace v. Holmes, 5 Fish. Pat. Cas. 37, Fed. Cas. No. 17,100, furnish an important completed part of the infringing machine,—a part which in itself embodied much of the patentee's invention. See Rob. Pat. § 903, and cases cited; Bowker v. Dows, 3 Ban. & A. 518, Fed. Cas. No. 1,734; Richardson v. Noyes, Fed. Cas. No. 11,792.

These suggestions are not made without purpose, nor are these questions asked captiously. The liability declared in the cases cited is somewhat novel, and is certainly far-reaching. That the principles upon which this liability rests should be ascertained, and that the limits of the liability should be defined, is of great importance, and it is believed that a frank discussion, even of opinions which I am bound to follow, may assist in reaching a satisfactory result. If there rests upon the seller of materials a duty of careful investigation into the objects of his vendee, as is asserted in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co., the former may, at least, reasonably ask precisely what he is bound to investigate.

The cases discussed were all decided on the theory that the sale of materials to an infringer, if made with a certain knowledge and a certain intent, constitutes an act of infringment for which the vendor may be made liable in an action at law. The respondents in these cases were enjoined because they had committed a tort and proposed to keep on committing it. The difficulties which beset this theory have been stated at some length, and perhaps the decisions might have been made to rest upon another theory, not alluded to in the opinions, which is in some respects less unsatisfactory in its application. It may be that one who sells materials or lends money or lets a building to a tort feasor, or otherwise aids in the commission of a tort, even if not liable as joint tort feasor in an action of tort for giving the aid, may yet be en-

joined by a court of equity from further continuance of his par-· ticipation or aiding or abetting in the tort. If this be a sound doctrine, then a defendant will be restrained only if and after it has been judicially determined that the act which he is aiding is a tort, the determination having been made in a suit to which he himself is a party. That equity should restrain the further doing of an act which was not a tort when previously committed, which becomes a tort, if at all, only after the injunction has been issued, and only in consequence of the issuance of the injunction, may seem a novel proceeding, yet analogies exist. An injunction is often issued against a corporation and its officers and agents for-bidding all to engage in an infringing manufacture. Not all the officers and agents enjoined have been guilty of the tort of infringe-ment, and it is at least possible, for example, that the issuance of an injunction enlarges the duty of a director to control the cor-porate acts, as well as provides an additional penalty for his neg-lect of duty. Again, in Supply Co. v. McCready, 17 Blatchf. 291, 301, Fed. Cas. No. 295, the carrier of infringing articles was en-joined from continuing the carriage. It was urged that he had been guilty of no wrong for which he could be sued at law, but the court said that "the cases cited for the defendants are cases where it has been held that workmen and employés will not be held lia-ble for profits and damages, in a suit for the infringement of a patent. Under section 4921 of the Revised Statutes, the authority of this court, in a case arising under the patent laws, of which it has jurisdiction, to grant an injunction, according to the course and principles of courts of equity, to prevent the violation of any right secured by a patent, is entirely independent of the award of any other relief in the same suit." "There can be no difficulty in so framing the order of injunction that, with the co-operation of the agents of the plaintiff, there will be but little practical diffi-culty in securing obedience to the injunction without serious prac-tical inconvenience to the defendants. The defendants' company will be deprived of no more carrying trade in respect to infringing ties than they would be deprived of if the shippers of such ties were enjoined, and it must be presumed that they would be en-joined if their names were known." It seems probable that, in Supply Co. v. McCready, the court would not have held that, pre-vious to the injunction, the defendant had committed any tort.

It is not worth while in this place to pursue further the sugges-tion just made. To the objection that it is novel, the answer may be made that the history of the jurisdiction and practice of equity is one of avowed novelty and flexibility, while the common law of torts is comparatively rigid. So far as the aider or abettor of a tort is amenable to an injunction, equity will consider if the aid given be sufficiently important to call for the injunction; but, if aiding a tort makes the aider a joint tort feasor, then he can be sued at law, whether the aid he rendered be great or small, since legal remedies, unlike injunctions, are of strict right, and not of judicial discretion. Again, so far as the remedy against aiding a tort be afforded by injunction only, the question of the extent and

degree of the respondent's knowledge will offer no difficulty, since the injunction, by its terms, will precisely define the respondent's duties.

There being no evidence to connect the respondent Sarah S. O'Brien with the sale complained of, no injunction will issue against her. As I am bound by the cases cited, an injunction against the respondent William O'Brien will issue, conformed as closely as may be to the injunction issued in Thomson-Houston Electric Co. v. Kelsey Electric Railway Specialty Co.