LEEDS & CATLIN CO. v. VICTOR TALKING MACH. CO. et al.

(Circuit Court of Appeals, Second Circuit. May 2, 1907.)

No. 282.

PATENTS—CONTRIBUTORY INFRINGEMENT—TALKING MACHINES.

A manufacturer of sound records only adapted to be practically used within the United States in a patented talking machine made and sold by another, in which the record disk, while not itself patented, is an essential element of the patented combination, who sells the same to owners of such machines for use therein is a contributory infringer of the patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patent, § 401.

Contributory infringement of patents, see note to Edison Electric L. Co. v. Peninsular Light, P. & H. Co., 43 C. C. A. 485.]

Wallace, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 148 Fed. 1022.

Louis Hicks, for plaintiff in error.

Horace Pettitt, for defendants in error.

Before WALLACE and COXE, Circuit Judges, and HOUGH, District Judge.

HOUGH, District Judge. Defendants in error, having brought suit against the plaintiff in error alleging infringement of the Berliner Gramaphone patent (No. 534,543), procured an injunction restraining the manufacture, use, or sale of sound reproducing apparatus or devices embodying the subject-matter specified in claims 5 and 35 of said patent, and also the use or employment in any way of the method set forth in claim 5 thereof (reported [C. C.] 146 Fed. 534, affirmed by this court 148 Fed. 1022). The claims protected by such adjudications are "a sound reproducing apparatus consisting of (1) a traveling tablet having a sound record formed thereon and (2) a reproducing stylus shaped for engagement with said record and free to be vibrated and propelled by the same, substantially as described" (No. 35), and the "method of reproducing sounds from a record of the same," consisting in "(1) vibrating a stylus, and (2) propelling the same along the record by and in accordance with the said record substantially as described" (No. 5); the "record" being identical with the "traveling tablet" above mentioned. In other words, the invention under consideration is the Victor Talking Machine, and the feature thereof here important is that its reproduction of sound depends upon the record groove cut in the traveling tablet (or disk record) compelling the movement of the stylus across the face of the record by the horizontal revolution of the record itself. The reproducer of which the stylus is an integral part is covered by claims of the Berliner patent, not now in question; but of the combination protected by claims 5 and 35 thereof the stylus alone (or rather the machine of which it forms a part) is itself patented, while the traveling tablet, sound record or disk record, is an unpatented article.

The Leeds & Catlin Company is a manufacturer of disk records, and, since the decision of this court above referred to, asserts that it has become a dealer in another talking machine known as the "feed-device machine," which for the purposes of this cause may be regarded as not infringing any of the rights of the Victor Company under the Berliner patent. The Leeds & Catlin disk records are equally suitable for the feed-device machine, and for that of the defendant in error.

Plaintiff in error was found to have sold disk records forming an essential part of the sound reproducing apparatus and devices covered by the above-mentioned claims of the Berliner patent, and was fined for such violation of injunction. This writ of error is to review the order imposing said fine.

On ample evidence, the court below found that most of the sales of Leeds & Catlin records were knowingly made by the plaintiff in error to enable the owners of Victor Talking Machines to reproduce such musical pieces as they wished by the combination of the Leeds & Catlin record with said machines; that the Leeds & Catlin Company made no effort to restrict the use to which their records might be put until after motion to punish for contempt had been made; that the only effort at such restriction ever made was to insert upon the face of the records a notice to the effect that such record was intended and sold for use with the "feed-device machine"; that the records sold by plain- tiff in error were far more frequently bought to increase the repertoire of the purchaser's Victor machine than to replace worn-out or broken records. In our opinion it is also established by the evidence that the "feed-device machine," above referred to, was not at or before the time of beginning this proceeding a practically or commercially known reproducer of musical or spoken sound, whereas the Victor machine, embodying the claims of the Berliner patent here under consideration, was at such times widely known and generally used, and that the plain- tiff in error knew, and sold its records with the knowledge, that if its output was to be used at all by the public it would be used with the Victor machine, and in the combination protected by the claims of the Berliner patent above referred to. Upon these facts it is clear that the Leeds & Catlin Company have made and sold a single element of the claims of the Berliner patent, with the intent that it should be united to the other element and complete the combination; and this is infringement (Heaton Peninsular, etc., Co. v. Eureka Specialty Co., 77 Fed. 297, 25 C. C. A. 267, 35 L. R. A. 728) adopted by this Court (Cortelyou v. Lowe, 111 Fed. 1005, 49 C. C. A. 671).

The facts above recited are scarcely controverted, nor is it denied that the above inference should ordinarily be drawn; but plaintiff in error seeks to avoid that result by asserting that the records under consideration are but temporary, perishable, and unpatented parts of the patented combination; and therefore under Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500, free to be manufactured and sold by any one. This contention is not supported by the evidence. Disk records are fragile (i. e., brittle and easily broken), but they are not perishable (i. e., subject to decay by their inherent qualities, or consumed by few uses or a single one). Neither are they temporary, i. e. not intended to endure; on the con-

trary, we find them capable of remaining useful for an indefinite period, and believe that they usually last as long as does the vogue of the sounds they record. A rifle bullet, lost by a single discharge, is a perishable and temporary part of the combination of rifle and ammunition, and probably a cartridge shell, though capable of reloading and use several time, may also be so regarded; but the missile of a toy gun, picked up and used again and again in its original form, is in no proper sense of the words either "perishable" or "temporary," though it may by repeated use wear out sooner than does the gun with which it is repeatedly combined.

Again it is urged inasmuch as disk records are unpatented articles of commerce, which may be used upon the feed-device machine or lawfully exported to foreign countries, that no infringement can be alleged against the maker and seller thereof, because his product may be or is in fact used by purchasers as one element of a patented combination. This argument disregards the facts established herein. It is true that the doctrine of contributory infringement has never been applied to a case where the thing contributed is one of general use, or suitable to a variety of other uses, especially where there is no definite purpose that the thing sold shall be employed with others to infringe a patent right. Rumford Chemical Works v. Hygienic Chemical Co. (C. C.) 148 Fed. 866, and cases cited. But this plaintiff in error is shown to have manufactured and sold records for the express purpose of supplying the users of Victor machines; nor are such records staple articles of commerce (Cortelyou v. Johnson, 145 Fed. 935, 76 C. C. A. 455); on the contrary, they cannot be practically used within the United States except with the Victor reproducer; for we regard the feed-device machine either as a curiosity or a pretense, while the foreign trade of plaintiff in error is not interfered with by the injunction, nor affected by the order under review.

It is further contended that those who purchase the patented combination in question without restriction have lawful right to provide themselves with unpatented records made by any person whatever, by way of replacement and repair. We perceive no substantial difference in the meaning of these words. To return to use something injured or lost, or to substitute for something defaced or destroyed another thing substantially identical, is to repair. The right of general repairing has not been questioned; but what plaintiff in error has done is not to mend or better broken or other records, nor even to furnish new records identical with those originally offered by the Victor Company, but to place upon new disks such other sound records as are thought to command a market, and to induce users of the patented machine not to replace, but to increase their stock of recorded words and music. The right of repair is measured by the right of the owner of the patented article, and such owner, when doing what is above outlined, is no more repairing his machine than is one repairing a stereopticon, by changing the pictures therein to suit the whim of the person gazing through it.

The final contention against the order below admits that the record actuating the stylus is a vital part of the combination claims of the patent in question; but declares that any purchaser of the patented article

may immediately substitute for even an essential element therein any other element which he conceives better suited to his purpose, and, of course, if this be true, such preferred elements may be freely manufactured and sold. We think this contention disposed of by Thomson-Houston, etc., Co. v. Kelsey, etc., Co., 75 Fed. 1005, 22 C. C. A. 1; for the right of substitution there recognized was specifically restricted so as to refuse "authority to reconstruct or rebuild a combination which has been sold by the complainant," and, whenever a Leeds & Catlin record is placed in a Victor machine, the patented combination is instantly reconstructed. The right of substitution rests upon the right to improve, pointed out by Clifford, J., in Chaffee v. Belting Co., 22 How. 223, 16 L. Ed. 240, and is different from the right to repair. But there is here no true substitution, and improvement is scarcely pretended. From a legal standpoint the disks of both parties are identical, because the grooving capable of actuating the reproducer is the same. What is substituted is but music or words, and what is improved, either price or novelty, is sound. These are but accidents, and no more important than the color of the disk. The true inquiry is whether the owner of a patented combination, the elements of which are durable, unbroken, and in good repair, may buy from the patentee one specimen of a single element, from an outsider an indefinite number of identical specimens of the same element, and keep and use them all, under cover of the word "substitution"; it further appearing that the element so procured and used is useful and commercially known only in respect of the said combination.

We think this cannot lawfully be done, and affirm the order below.

WALLACE, Circuit Judge (dissenting). In considering the question of infringement, claim 5 may be laid out of view, as it covers merely the function of the machine or combination of claim 35. It is more than doubtful whether the claim is not void upon its face, but assuming it to be valid, as must be done for present purposes, it is not infringed except by using the combination or machine of claim 35. A sound record is one of the parts enumerated in claim 35. It is, however, only a subsidiary part of the machine. Its relation to the machine proper is analogous to that of the sheet of paper in a typewriting machine or the stalks of corn in a corn cutter. It is the thing which is to be operated on by the machine proper. The invention of the claim consisted in substituting a universal joint, or swinging arm, in lieu of a feed screw device, and thereby producing a new form of reproducing stylus for engaging with the record and everything else in the machine was old. This clearly appears by the opinion in the suit in which the validity of the patent was established. Victor Talking Machine Co. v. American Graphophone Co. (C. C.) 140 Fed. 860.

It is not questioned, and cannot be, that the plaintiffs in error were at complete liberty to make and sell such sound records as they did, provided they did not sell them to purchasers who had no right to use them in combination with the other devices enumerated in claim 35. They have been adjudged guilty of contempt because they have sold them, or threatened to sell them, to users of the so-called "Victor" machine which embodies the combination, and who purchased their

machines from the Victor Talking Machine Company, the owner of the patent. If these purchasers were at liberty to remove a sound record which originally accompanied the machine, and substitute for it a sound record sold by the plaintiffs in error, they were not infringers; and plainly the plaintiffs in error could not be infringers by assisting the purchasers to do that which they had a right to do. The real question in the case, therefore, is whether the purchasers of the Victor machines infringe the patent by using in their machines the sound records manufactured by the plaintiffs in error.

The purchaser of a patented machine from the owner of the patent acquires the right to do what he may choose with the particular machine, or any of its parts, as freely as he could if it, or none of its parts, had ever been patented. Undoubtedly he cannot, after his machine has practically ceased to exist for any useful purpose, reconstruct it by reparation, nor can he then reconstruct it by disorganizing it and substituting as new parts the dominating and vital features of the patented invention. But no question of this kind is involved in the present controversy. The only question is whether he can discard a part he does not care to use, and substitute another. When such a part is not the fundamental invention in the patented machine, I cannot doubt he is at liberty to do so. This was so decided by this court in the "trolley stand" case (Thomson-Houston Co. v. Kelsey Co., 75 Fed. 1005, 22 C. C. A. 1), and is not an open question in this court, unless it is proposed to reconsider and overrule that decision. He is not under any implied promise to maintain the machine as an entity, and may do whatever he chooses with any of its parts, as fully as if there had not been a patent.

Let us consider from a practical standpoint what any other rule would lead to in a case like the present. The purchaser here has bought with his machine a sound record, or half a dozen sound records, each having the necessary grooves cut in it to enable him to reproduce for his own pleasure a particular piece of music. The record is a fragile thing which is to be inserted into the machine by the user, and must be adjusted accurately to the vibrating parts, and is to be removed when he wants to reproduce a different piece of music. Any slip of the hand will destroy it. Not only is this so, but its sound producing qualities are lost by the contact of the needle which is vibrated in its grooves long before the machine proper is worn out, and generally early in its normal life. Whenever either of these things happens, a machine, which costs at least $17, is disabled unless a record like one which has been sold with it at the price of 35 cents, and which anybody and everybody has a right to make, may be replaced in the machine in lieu of the useless one. If the owner of the patent stops manufacturing records, or no longer has in the market a record grooved like the one which has been destroyed, what is the purchaser to do if he has not the right to replace a record without the permission of the patent owner? The purchasers of the Victor machine cannot require the Victor Talking Machine Company to supply them with records, and can only procure them from it on such terms as it pleases to exact. If they are not at liberty to procure them elsewhere, the

company can dictate how long they are to enjoy the use of their machines.

Such a rule of infringement as is adopted by the majority opinion, not only extends the monopoly of the patent owner to an unprecedented extent, but is subversive of the right of a purchaser of the patented thing to realize its fair measure of usefulness by making necessary reparations or changes by way of improvement.