**ANN ARBOR R. CO. v. CITY OF TOLEDO et al.**

District Court, N. D. Ohio, W. D. April 15, 1929.

No. 651.

Smith, Beckwith, Ohlinger & Froehlich, of Toledo, Ohio, for plaintiff.

The City Solicitor, and J. P. Delphey, of Toledo, Ohio, for defendant.

HAHN, District Judge. The city of Toledo has let a contract for the performance of certain work on a foot bridge in Riverside Park, a public park of this city. The footbridge crosses two tracks of the plaintiff company and two tracks of the Pennsylvania Railroad. Plaintiff seeks to enjoin the performance of the contract on the ground that the city is *rebuilding* the footbridge, and that such rebuilding comes within the inhibition of section 8903 of the General Code of Ohio. This statute provides that a footbridge of the kind here involved must have a clearance of 21 feet "from the top of the rails of such track or tracks." The present footbridge has a clearance of about 17 feet above the plaintiff's tracks, although it has about 20 or 21 feet above the Pennsylvania tracks.

We have twice "viewed the premises," and our statement of facts will include some facts not in the record. The facts upon which a decision of the case turns, however, have been fully presented by counsel and are in the record.

Riverside Park is located about two miles from the center of the city. It stretches along the Maumee river, and would border upon the river, except that the rights of way of the two railroads above mentioned are just upon the water's edge. At but one point does the land of the park afford access to the river, and to reach this point without trespassing upon the rights of way of the railroad companies the footbridge was built. It affords access to a small parcel of land projecting into the Maumee river, upon which is located a pavilion which serves also as a boathouse. The footbridge is placed upon six concrete abutments, two on each end and two between the tracks of the railroad companies. These abutments and the supports resting thereon are in an excellent state of preservation. The same may be said about other portions of the footbridge.

The plaintiff would like a higher bridge. Some time ago it had a higher footbridge constructed and offered to present it to the city. The city claims that the presentation to it was to be upon conditions which the city council was unwilling to accept. The motive of the railroad company is to protect the lives and safety of its employees. The bill alleges that in the past employees of the railroad company have been injured in the operation of cars and trains under the footbridge, causing great loss and damage to the plaintiff, but there is no proof to that effect in the record. Perhaps the two telltales placed at appropriate distances from both ends of the footbridge have served their purpose well.

The citizens of Toledo, refusing the offer of the plaintiff of a new footbridge, do so with equally good motives. They have in mind the protection of the lives and safety of frequenters of the park, especially the children, who must cross the footbridge or trespass across the four tracks of the railroad companies to reach the pavilion and the water's edge. The warning sign of the railroad company, "Caution. Do Not Walk or Trespass on the Railroad," has not been entirely efficacious, although the record shows no injury to any trespasser. They contend that the footbridge, with a 17-foot clearance only, is of such a character that it has largely fallen into disuse. A person crossing the footbridge from the park mounts 12 steps to the footbridge proper, travels 40 steps across it, then down 24 steps to a landing, 4 steps across the landing, and then 12 steps to the ground. The return trip is even more onerous. They argue that, if the footbridge is raised to the statutory height, the burden to a person crossing the same will be increased to such an extent that the footbridge will fall into entire disuse, and that the present dangers, especially to children, will be materially increased.

With the motives of the parties we, of course, have no concern. We must determine the demands of the statute. Nor are we concerned with the question whether or not council of the city of Toledo should have built a new footbridge rather than to attempt to repair the existing structure. That was a question of policy, which must be left to the final determination of the council. Unless the present plans offend against the statute, we are not concerned with the determination of council. We discuss these matters only because they seem to have an important place in the minds of the parties and their counsel.

The footbridge was built in 1893. On May 21, 1894, the Legislature passed an act, 91 Ohio Laws, p. 365, to the effect that a foot-bridge, such as here involved, "shall be of such height as to be not less than 21 feet in clear from the top surface of the rails of said track or tracks to * * * the lowest downward projection on such bridge." This act, however, contained a proviso as to existing bridges, as follows: "Provided, that where any bridge * * * or footbridge over a railroad track or tracks, is *rebuilt*, it shall be brought under the provisions of this act. * * * *"

This act was amended, 94 Ohio Laws, p. 297, April 16, 1900, and became section 3337-18 of Bates' Ohio Annotated Code, Sixth Edition. As applied to this case, the statute was not changed by this amendment. In the codification of 1910, the act appeared in three sections, and, at present, as amended, 111 Ohio Laws, p. 43, July 1, 1925, these sections are 8903–8905 of the General Code of the state of Ohio. Section 8903 is as follows:

*"Height over Railroads.*—Except cases in which the state railroad commission finds that such construction is impracticable, bridges, viaducts, overhead roadways, footbridges, wire or other structure hereafter built over the track or tracks of a railroad or railroads by a county, municipality, township, railroad company, other corporation or person, shall be not less than twenty-one feet in the clear from the top of the rails of such track or tracks, to such wire or other structure or to the bottom of the lowest sill, girder or crossbeam, and the lowest downward projection on the bridge, viaduct, overhead roadway or footbridge."

We assume that by the slight change in the wording of the statute the Legislature intended no change of legislative intent as to existing structures. Conger v. Barker's Administrator, 11 Ohio St. 1; Black on Interpretation of Laws (2d Ed.) p. 594.

Section 8907 provides that section 8903 may be enforced by injunction on complaint of any person, corporation, or board interested therein. Section 8903 is a penal statute, for section 12546 of the General Code provides that, in the event of a violation of section 8903, the offending municipality shall be fined not less than $100, nor more than $1,000, and further provides that each day such structure is permitted to so remain in violation of law shall constitute a separate offense.

From the legislative history of section 8903, it appears that a structure having existed before 1894 may be repaired indefinitely without offending against the statute. The act would apply only to a structure that was rebuilt or reconstructed after

the passage of the act. The case was tried by the parties upon that theory.

Neither the Supreme Court of Ohio nor any other Ohio court has construed the statute which applies to this controversy. However, in Board of Education v. Moorehead, 105 Ohio St. 237, 242, 243, 136 N. E. 913, 914, the Supreme Court of Ohio gave its understanding of the meaning of the words "repairing" and "rebuilding," in the following language:

" 'Repairing,' which means, as we understand it, the restoring of a decayed, injured, dilapidated, or partially destroyed building to a more or less sound, substantial state or 'rebuilding,' which means, as we understand it, to build again something which has been demolished."

In Foglesong Machine Co. v. J. D. Randall Co. (1917, C. C. A. 6) 239 F. 893, the first paragraph of the syllabus is in part as follows: "The replacing of lost or injured parts of the mechanism of a patented machine constitutes 'repair' and not 'reconstruction.' " The court cites Leeds & Catlin Co. v. Victor Talking Machine Co. (C. C. A.) 154 F. 58–60 (23 L. R. A. (N. S.) 1027), where we find the following definition: "To substitute for something defaced or destroyed another thing substantially identical is to repair."

Another definition is: "Repair is 'restoration to a sound, good, or complete state after decay, injury, dilapidation, or partial destruction.' " Goodyear Shoe Machinery Co. v. Jackson, 112 F. 146, 150, 55 L. R. A. 692 (C. C. A. 1), quoted 7 Words and Phrases, First Series, 6100.

It follows from the above definitions that, if any substantial portion of the footbridge was in a sound state of preservation, the restoration of the entire footbridge to a "sound, good, or complete state" would be repairing it, even if parts of the footbridge may have sustained "decay, injury, dilapidation, or partial destruction."

It seem to us that it would not be helpful to a reviewing court if we gave in detail the work contemplated by the city. It can be gleaned most readily from Exhibits 1, 2, and 3, which are the specifications and blueprints prepared by the department of public safety of the city of Toledo. The position of the plaintiff may be gathered from the opening statement of its counsel, who said, in referring to the above exhibits:

"Red is the old material, and the transcript so shows the old material, by underlining in red. As we view this case, the evidence, I think, is clear that at least 50 per cent. of the structure of the bridge and 50 per cent. of the value of the bridge is to be replaced. If you consider the flooring and the joists and the steps to the approaches, then the replacement would be more than 50 per cent. in material; but if you consider only the important members of the bridge, such as the girders and upper and lower cords of the girders, and the lattice work, the reinforcement of the struts underneath that contribute to make the cords rigid, then I think the evidence shows satisfactorily that 50 per cent. of this bridge is being replaced. And I don't think there is any contradiction in the testimony to the evidence that, so far as value is concerned, cost is concerned, this bridge could be reconstructed new on the old plans to-day for between five and six thousand dollars. It probably was built for $2,500 back in 1893. But the cost of this repair, so called, will be $2,800. Our position is that this is a reconstruction, therefore, under the terms of the statute. This statute was enacted for the purpose of protecting human life."

The plaintiff's evidence would not make a stronger case for the plaintiff if it were undisputed, and its claims as above stated are strenuously disputed by the witnesses for the city.

Both the plaintiff and the defendant called as witnesses engineers, or construction engineers, who gave their opinions as to the kind of work contemplated by the city. Plaintiff's witnesses regard the contemplated work as a reconstruction or a rebuilding. The city's witnesses, including such disinterested engineers as Mr. Sherman and Mr. Barker, regard it as repairing. After a careful study of the evidence, considered in connection with the legislative act and the cases above cited, we agree with the witnesses for the city. We think the contemplated work comes well within the definitions of the word "repair."

We have given the words of the statute their ordinary construction, as opposed to the construction applicable to penal statutes. We think our conclusion is strengthened by the consideration that an opposite conclusion would be in effect a holding that the city of Toledo would be guilty of violating the criminal statute above cited if it carried out its present plans. We think its contemplated action falls far short of such a violation.

An order may be drawn dissolving the temporary injunction heretofore granted herein, and dismissing the bill, at the costs of the plaintiff.